568 F.2d 506
 16 Fair Empl.Prac.Cas. 361, 15 Empl. Prac.
Dec. P 8022
Tilford YOUNGBLOOD et al.
Ohio Civil Rights Commission, Plaintiffs-Appellants,
v.
John DALZELL, Harold Latimer, Arthur Hull, William Clarke,
Henry J. Sandman, Bert A. Lugannani, Defendants-Appellees,
Frederick W. Maly and Glenn A. Byrd, Intervenors-Appellees.
 No. 77-3234.
 United States Court of Appeals,
Sixth Circuit.
 Argued Oct. 6, 1977.
Decided Jan. 10, 1978.
 
 William J. Brown, Atty. Gen. of Ohio, Richard D. Letts, Asst. Atty. Gen., Columbus, Ohio, for plaintiffs.
 Thomas A. Luebbers, City Sol., Paul R. Berninger, Cincinnati, Ohio, for defendants.
 Before EDWARDS, LIVELY and ENGEL, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiffs in a class action which was filed in the District Court and which resulted in a consent decree now appeal from the District Court's denial of injunctive relief and contempt action essentially against the Fire Department of the City of Cincinnati. The sole ground for this appeal is plaintiffs- appellants' contention that a lay-off of 68 white and black firemen on December 5, 1976, violated the previously entered consent decree. Finding no language in the consent decree which dealt with the problem of lay-off due to economic circumstances or which purported to prohibit such, we affirm the District Court.
 
 
 2
 The original District Court suit charged the Cincinnati Fire Department with violating the equal protection and the due process clauses of the Fourteenth Amendment, and federal civil rights statutes, 42 U.S.C. §§ 1981 and 1983 (1970), by discriminating against blacks in the hiring of firemen.[1] The suit was brought under 28 U.S.C. § 1343 (1970). The case was never tried to conclusion and no findings in relation to the allegations of unconstitutional discrimination have ever been made. When the parties agreed upon the consent decree, paragraph five thereof specifically provided:
 
 
 3
 The Defendants deny that they have heretofore engaged in any pattern or practice of discrimination in recruiting, testing, selecting, and hiring fire recruits or in promoting firemen on the basis of race, but realize that certain past practices of the Division of Fire, Department of Safety and the Civil Service Commission of the City of Cincinnati, Ohio, may give rise to an inference that such pattern or practice may have occurred. For the purpose of avoiding any such inference, the Defendants have heretofore taken certain steps and promulgated certain policies intended to increase the availability and selection of qualified minority applicants for employment and promotion, and, for the same purpose and with the same intent, and being desirous of implementing a solution to the subject matter of this action without the expense of litigation, are now willing to agree to the entry of a Consent Decree providing for additional measures to be taken.
 
 
 4
 The Consent Decree continued with a paragraph by which the parties mutually waived hearing and findings of fact and conclusions of law, and which substituted the Consent Decree as a final and binding order in the action. The balance of the Consent Decree served to enjoin the City of Cincinnati from all acts and practices of racial discrimination in the Fire Division in the future (which they denied they had practiced in the past) and affirmatively committed the City to:
 
 
 5
 Seek to achieve a goal of hiring sufficient numbers of qualified minority persons to achieve a work force composition which will not support any inference of racial discrimination in hiring. Such goal shall be deemed to have been achieved when at least eighteen (18) percent of the Division of Fire personnel of the City of Cincinnati are minority persons. In order to reach this goal, Defendants shall adopt and seek to achieve a goal of hiring sufficient minority persons so that the personnel in the Division of Fire will be:
 
 4.2% Minority by December 31, 1974
 6 % Minority by December 31, 1975
 8 % Minority by December 31, 1976
 10.5% Minority by December 31, 1977
 13 % Minority by December 31, 1978
 15.5% Minority by December 31, 1979
 18 % Minority by December 31, 1980
 
 6
 In the litigation before the District Court which resulted in the instant appeal, there is no dispute but that the City attempted in good faith to carry out the terms of the Consent Decree and had made genuine progress thereon as of the date of the now disputed reduction in force, there having been added to the force a sufficient number of the plaintiff class so that it represented 7% Of the employment of the Fire Division. The effect of the reduction in force which was accomplished in accordance with date of hire as mandated by a statute of the State of Ohio in relation to fire fighters,[2] was to release 68 employees of the Fire Department, of whom 28 were members of the minority class represented by plaintiffs, and to reduce the total minority representation to 4.4% Of the Fire Department employment complement.
 
 
 7
 Plaintiffs sought before the District Court, and now seek before us, an order to show cause why the defendants should not be held in contempt of court for failing to comply with the Consent Decree and an enforceable order requiring that all fire fighters who had been laid off be returned to work with back pay.
 
 
 8
 While it appears that before the District Court this latter relief may have been phrased only as to fire fighters who were of a minority race, it was made entirely clear before this court that the relief sought was a return to work of all 68 of the laid-off fire fighters without regard to their minority or majority status.
 
 
 9
 Further, before the District Court plaintiffs-appellants stipulated to an extensive presentation of the City's economic position (upon which it relies) and proof that the lay-offs were required by impending City deficits of revenue as opposed to expenditures.
 
 
 10
 No contention was made before the District Court (nor is any made before this court) that the lay-offs were intended to accomplish a discriminatory purpose concerning fire fighters' employment. As pointed out above, no trial or adjudication of plaintiffs' original claims of discrimination has ever been had because of the termination of the District Court litigation by means of the Consent Decree.
 
 
 11
 The sum total of the appellate posture of this case is that appellants' sole reliance is upon the terms of the Consent Decree, which appellants would read as imposing a duty upon the City of Cincinnati not to reduce force in the Fire Division if that had the effect of reducing the percentage of minority firemen. The trouble with this contention is that there is no language in the Consent Decree which supports it. Obviously, the Consent Decree was the product of negotiation and bargaining in which the City accepted plaintiffs-appellants' minority hiring "goals" while refusing to admit the past unconstitutional discrimination which appellants had charged. The negotiated product did not commit the City to hire any specific number of minority firemen, nor did it commit the City to any policy at all in relation to forced employment reduction and lay-offs.
 
 
 12
 Further, before this court plaintiffs-appellants, including the Ohio Civil Rights Division as intervenors, specifically disclaimed any attack upon the constitutionality of the Ohio statute, previously referred to, which mandated seniority in the lay-off of firemen in Ohio cities. For that reason this court makes no comment upon said statute.
 
 
 13
 This court takes cognizance of the fact that the parties conceded that when this litigation began, the number of minority firemen represented in the Fire Division was one-half of one per cent of the fire fighters complement. The District Court, as we have pointed out above, made no holding that this situation resulted from violations by the City of Cincinnati and its Fire Division of the Federal Constitution. It also made no holding that this situation did not result from violations of the Federal Constitution. The issue simply was not tried because the parties arrived at the Consent Decree which we have discussed. The District Judge pointed out that any one of the minority firemen laid off who desired to assert that he individually had been discriminated against by a refusal of employment in the years prior to the time he actually was hired, could file suit to secure an adjudication of his rights to retroactive seniority under the Supreme Court rule in Franks v. Bowman Transportation Co., 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976).
 
 
 14
 In summation, the Consent Decree, which plaintiffs-appellants agreed to substitute for their claim of a right to a judicial remedy for violation of the Federal and Ohio Constitutions, proved to be strong support for affirmative action in hiring minority fire fighters in good times, but it represents a weak reed indeed with which to resist the impact of a lay-off induced by adverse economic circumstances.
 
 
 15
 The judgment of the District Court is affirmed.
 
 
 
 [1]
 Similar violations of the Ohio Constitution and laws were also claimed. See Ohio Constitution art. I, § 2 and Ohio Rev. Code ch. 4112
 
 
 [2]
 When it becomes necessary in a police or fire department, through lack of work or funds, or for causes other than those outlined in section 124.34 of the Revised Code, to reduce the force in such department, the youngest employee in point of service shall be first laid off
 Ohio Rev.Code Ann. § 124.37 (Page Supp.1976).